UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-61137-CIV-COHN/SELTZER

DELOIS HARRIS,

    Plaintiff,

vs.

HIP ADMINISTRATORS OF FLORIDA, INC.,
and EMBLEM HEALTH SERVICES, LLC,

    Defendants.
_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendants' Motion for Summary Judgment [DE 28] and Plaintiff's Motion for Partial Summary Judgment Against Defendants [DE 32] (collectively "Motions"). The Court has reviewed the Motions, all of the parties' submissions, and is otherwise advised in the premises.

### I. BACKGROUND

Defendant HIP Administrators of Florida, Inc. ("HIPA") employed Plaintiff as a Medicare sales representative in 1998. Plaintiff's Deposition [DE 33-1] at 5.[1] In 2005, Plaintiff's position with HIPA changed and she became a telesales representative. Id. As a telesales representative, Plaintiff contacted small business owners in New York to inform them about different health care plans that HIPA offered. Id. at 6. If the small business owners wanted to join a particular plan, Plaintiff provided them with

---

[1] Plaintiff's deposition transcript is split into two separate docket entries on the docket (i.e., DE's 33-1 and 33-2). Pinpoint citations to page numbers in this order refer to the CM/ECF page numbers rather than the page numbers printed on the deposition transcript.

information about that plan and sent them an enrollment kit so that they could join the health plan.  Id.  Plaintiff worked seven-and-a-half hours per day, five days per week, and held her telesales representative position for approximately five years.  Id. at 6-8.

In January 2010, Plaintiff received a performance evaluation for 2009, in which she received an overall rating of "needs improvement."  The evaluation indicated that Plaintiff failed to meet her annual sales numbers for 2009.[2]  Consequently, in January 2010, HIPA placed Plaintiff on a Performance Improvement Plan ("PIP").  See Plaintiff's Deposition [DE 33-1] at 16.  The PIP period was from February 1, 2010, through March 31, 2010.  See id. at 17.  In late March or early April of 2010, HIPA advised Plaintiff that her PIP would be extended for sixty-days from April 1, 2010, through May 31, 2010.  See id.  The PIP required Plaintiff to make at least 111 sales by the end of May 2010.[3]  Id. at 18.  HIPA advised Plaintiff, and Plaintiff understood, that HIPA would terminate her if she did not meet the minimum 111 sales target by the end of May 2010.[4]

---

[2]    Plaintiff's evaluations for 2006 and 2007 also indicated that Plaintiff needed to improve her sales numbers.  See Plaintiff's Deposition [DE 33-1] at 17.

[3]    The term "sale" is somewhat misleading in this case, for sales numbers were not predicated on the number of small businesses that Plaintiff enrolled in health insurance plans, but on the number of employees at each small business that enrolled in the plan.  See Plaintiff's Deposition [DE 33-1] at 9.

[4]    Plaintiff, in her Statement of Material Facts in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment [DE 34-1], "admits only that Defendants communicated to her that her employment could be terminated if she did not reach 111 member sales by May 31, 2010."  Id. ¶ 11 (emphasis added).  However, Plaintiff repeatedly testified at her deposition that HIPA told her she would be terminated if she did not meet the sales goal by May 31, 2010.  See Plaintiff's Deposition [DE 33-1] at 18-19 (Question: "And did Mr. Carmona tell you that in April 2010, that your employment would be terminated if you did not meet that goal by May 31st, 2010?" Answer: "Yes."); id. at 20 (Question: "[Y]ou did know, didn't you, that if you did not meet your sales target by the end of May, your employment would be

In early- to mid-May 2010, it became clear to HIPA that Plaintiff was not going to ultimately meet the minimum 111 sales target. See Sworn Affidavit of Susan Coleman [DE 30-2] ¶ 11 ("Coleman Affidavit"); see also Sworn Affidavit of S. Jorge Carmona [DE 30-1] ¶ 15 ("Carmona Affidavit"). During the week of May 17, 2010, HIPA decided to terminate Plaintiff at the end of May once the final sales report confirmed that Plaintiff did not meet her sales target. Coleman Affidavit ¶ 11; Carmona Affidavit ¶ 16.

On Friday, May 28, 2010, Plaintiff went to work, but she left at approximately 10:00 a.m. to see her doctor because she did not feel well.[5] See Plaintiff's Deposition [33-1] at 10. After visiting her doctor on May 28, 2010, Plaintiff advised HIPA for the first time that she would need to take a leave of absence from May 28, 2010, until June 14, 2010, pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et. seq. ("FMLA"). See id. at 12-13. HIPA's third-party administrator approved the request. Id.

HIPA received the final sales report for May 2010 in the first week of June 2010. See Coleman Affidavit ¶ 12. Notwithstanding the FMLA leave, the final sales report confirmed that Plaintiff made only 98 sales prior to the end of May 2010. Id. Thus, on or about June 10, 2010, HIPA advised Plaintiff that it had terminated her employment because she did not meet the sales target required under her PIP. Id. ¶ 13.

After her termination, Plaintiff filed a one-count complaint against HIPA asserting

---

terminated. Correct?" Answer: "I know.").

[5] Friday, May 28, 2010, was the last business day of the month because May 31, 2010, was Memorial Day and HIPA was closed. See Plaintiff's Deposition [DE 33-1] at 20.

that HIPA violated the FMLA.  See Complaint [DE 1].  The Complaint alleges in a single count that "Defendant denied or otherwise interfered with [Plaintiff's] substantive rights under the FMLA, 29 U.S.C. § 2615(a)(1), and retaliated against Plaintiff for engaging in activity protected by the FMLA, 29 U.S.C. § 2615(a)(1)-(2)."  Id. ¶ 16.

Thereafter, Plaintiff filed an amended complaint wherein she added Emblem Health Services, LLC ("Emblem") as a defendant and alleged that HIPA and Emblem "operate a health insurance business."[6]  Amended Complaint [DE 21] ¶ 5.  The Amended Complaint asserts the same claim as the Complaint (i.e., violations of the FMLA predicated on interference and retaliation).  The parties have moved for summary judgment.

## II. DISCUSSION

### A. Legal Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that "there is an absence of evidence to support the non-moving party's case."  Id. at 325.

---

[6] The Amended Complaint fails to distinguish between the named defendants or explain the relationship between the named defendants.  Instead, the Amended Complaint asserts each allegation against "HIPA and/or Emblem."  See generally Amended Complaint.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Federal Rule of Civil Procedure 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### B. Plaintiff Has Failed to Demonstrate a Disputed Issue of Material Fact

The FMLA affords eligible employees the right to "12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee," 29 U.S.C. § 2612(a)(1), and the right following leave "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position, 29 U.S.C. § 2614(a)(1). The FMLA therefore creates two types of claims: (1) interference claims, whereby an employee asserts that his employer denied

5

or otherwise interfered with his substantive rights under the FMLA and (2) retaliation claims, whereby an employee asserts that his employer discriminated against him because he engaged in activity protected by the FMLA.  See O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1352 (11th Cir. 2000) (citing 29 U.S.C. § 2615(a)(1)-(2)).

To state a claim of interference with a substantive right, an employee must demonstrate by a preponderance of the evidence that she was entitled to the benefit denied.  See Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206-07 (11th Cir. 2001) (citing O'Connor, 200 F.3d at 1353-54).  Nonetheless, "[a]n employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed with the company during the FMLA leave period."  29 C.F.R. § 825.216(a); see also O'Connor, 200 F.3d at 1349.  Thus, an employer need not reinstate an employee if it can "demonstrate it would have discharged the employee even had she not been on FMLA leave."  O'Connor, 200 F.3d at 1349.  "In other words, if an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable."  Strickland, 239 F.3d at 1207.

Alternatively, "to succeed on a retaliation claim, an employee must demonstrate that [her] employer intentionally discriminated against [her] in the form of an adverse employment action for having exercised an FMLA right."  Id.  Thus, a plaintiff who brings a retaliation claim faces the increased burden of showing that an impermissible retaliatory or discriminatory animus motivated her employer's actions.  See id.

6

1. Interference

"Plaintiff asserts that she was terminated while on FMLA leave, which was an interference with her rights under the FMLA, and that Plaintiff was entitled to reinstatement to her position after returning from leave and provided with a reasonable time to complete her performance improvement plan."[7]  Plaintiff's Motion for Partial Summary Judgment [DE 32] at 2.  Plaintiff further submits that "Defendants cannot establish, as a matter of law, that Plaintiff would have been terminated regardless of her being on FMLA leave."  Id. at 3.  The Court disagrees.

Undisputed evidence shows that HIPA advised Plaintiff, prior to Plaintiff's request for FMLA leave, that HIPA would terminate her if she did not make 111 sales by May 31, 2011.  See Plaintiff's Deposition [DE 33-1] at 18-20.  As of 10:00 a.m. on the last work day of May 2010, Plaintiff had only ninety-eight sales.  At that point she left work to go to the doctor.

Plaintiff therefore argues that HIPA interfered with her FMLA rights insofar as HIPA should have extended her PIP.  See Plaintiff's Motion for Partial Summary Judgment [DE 32] at 3.  Specifically, Plaintiff contends that "given the possibility that Plaintiff could have completed her [PIP] and met her performance goal, had she actually been present for the majority of the day on May 28, 2010, Defendants, by

---

[7] Plaintiff testified at her deposition that she experienced stress, blurred vision, and swollen feet prior to May 28, 2010.  Plaintiff's Deposition [33-1] at 12.  Accordingly, she scheduled a doctor's appointment prior to May 28, 2010, but she cancelled the appointment because she wanted to meet her sales goal.  Id.  Plaintiff further testified that she never informed her employer, prior to May 28, 2010, that she was experiencing health problems.  Id.  Plaintiff also testified that her employer never told her that she could not take off days to see her doctor or that she had to come in to work rather than address her medical condition.  Id.

terminating Plaintiff while she was on leave, have violated Plaintiff's FMLA rights as a matter of law." Id.  This argument fails for several reasons.

First, to support her argument, Plaintiff cites 29 C.F.R. § 825.215(b), which provides as follows:  "If an employee is no longer qualified for the position because of the employee's inability to attend a necessary course, renew a license, fly a minimum number of hours, etc., as a result of the leave, the employee shall be given a reasonable opportunity to fulfill those conditions upon return to work."  Here, however, evidence does not show that Plaintiff was terminated because she was purportedly unqualified for her position due to a training or licensing requirement.  Rather, Plaintiff was terminated because she failed to make a certain number of sales within a certain time period, after receiving several warnings.  See, e.g., Plaintiff's Deposition [DE 33-1] at 15-17.  Therefore, 29 C.F.R. § 825.215(b) is not applicable here.

Second, Plaintiff argues that HIPA should have afforded her a "reasonable time" to complete her sales goal because HIPA had a policy to reduce sales goals for employees returning from a leave of absence.  See Plaintiff's Response to Defendant's Motion for Summary Judgment [DE 34] (citing Plaintiff's Statement of Facts [DE 34-1] ¶ 28).  To support that argument, Plaintiff cites the deposition testimony of HIPA's Lead HR Specialist who testified that employees on FMLA leave could receive "full incentives" based on prorated sales figures.  See DE 32-3 at 49-50.  An "incentive," however, is distinct from a PIP.[8]

---

[8]  Plaintiff testified that if employees at HIPA reached a threshold amount of sales within a particular month, the employee received a higher commission than she otherwise would.  See Plaintiff's Deposition [DE 33-1] at 9.  HIPA paid its employees a commission, however, albeit a lower one, even if the employee did not reach the

Moreover, a prorated sales goal is not an extension of time. Thus, if HIPA applied this "policy" to Plaintiff's situation, the result would not be to extend the PIP, but to reduce the number of sales required pursuant to the PIP. Consequently, even if HIPA reduced the sales goal on a prorated basis by a full day of the PIP period (i.e., one day out of 151 total days, or 0.7%), Plaintiff's sales goal would have been reduced from 111 sales to 110 sales. Plaintiff still would have fallen short by twelve sales. Likewise, even if the PIP period was only 104 days (i.e., 151 calendar days excluding weekends and holidays between January 1, 2010, and May 31, 2010), one day out of 104 days is 0.9%. Again, Plaintiff's sales goal would have been reduced to 110 sales and Plaintiff would have fallen short by twelve sales. Thus, HIPA's supposed failure to apply the alleged policy is ultimately irrelevant.

Third, only one work-day of the five-month PIP period is at issue here.[9] Even if HIPA extended the PIP by a full work day, rather than the partial day she actually missed, Plaintiff needed to make thirteen sales in a single day.[10] Plaintiff, however,

---

threshold number of sale for the "incentive." See id. Conversely, the PIP represents a minimum number of sales an employee must reach merely to keep her job.

[9] Plaintiff testified that she worked from 8:30 a.m. until 5:00 p.m. and had a one hour lunch break. See Plaintiff's Deposition [DE 33-1] at 8. Plaintiff further testified that she left work at approximately 10:00 a.m. on May 28, 2010. See id. at 10. Plaintiff, therefore, missed approximately six hours of work during the PIP period. See id.

[10] Plaintiff testified that "If I would have had that day [i.e., May 28, 2010], I'm sure that I could have gotten – reached some of the ones that I was contacting, following up on, and who knows, who is to say those people that I was following up on, they didn't call in when I was out that day?" Plaintiff's Deposition [33-1] at 19. Plaintiff concedes, however, that she was merely speculating about her ability to make sales on May 28, 2010. See id.

never received credit for thirteen sales on any single day of 2010.[11]  Although it was theoretically possible for Plaintiff to make thirteen sales on the afternoon of May 28, 2010, the Court does not find that the theoretical possibility, without further evidence regarding the likelihood of such a sale, constitutes a genuine issue of disputed fact.[12]  HIPA, therefore, has produced ample evidence that it would have discharged Plaintiff even if she had not been on FMLA leave.  Because Plaintiff has failed to demonstrate a genuine issue of disputed fact regarding whether HIPA would have terminated her even if she was not on FMLA leave, the Court will grant Defendant's Motion for Summary Judgment on the interference claim.[13]

---

[11]  Defense counsel asked Plaintiff at her deposition, "Were there any days that you had, in 2010, any days where you had gotten credit for thirteen sales on one single day?"  Plaintiff responded as follows: "No, not for one single day, but then it's added up and equaled to 13."  Plaintiff's Deposition [DE 33-1] at 24.

[12]  Plaintiff maintains that she had a pending sale for a group of fifty individuals from a school that she had been communicating with since March 2010.  See Plaintiff's Deposition [DE 33-1] at 24.  If, on the afternoon of May 28, 2010, Plaintiff had made the sale to that school, Plaintiff would have exceeded the sales goal set forth in the PIP.  Plaintiff, however, had from March 2010 until the morning of May 28, 2010, to make a sale to the school.  The Court, therefore, does not recognize the possibility of a sale to the school as a genuine issue of disputed fact.

Furthermore, on several occasions during the five year-period that Plaintiff held her telesales representative position, Plaintiff requested that sales she procured after the end of a particular month be credited to the previous month.  See Plaintiff's Deposition [DE 33-2] at 8.  Plaintiff's supervisor granted such requests.  See id.  Plaintiff further testified that she believed her supervisor would have extended her the same courtesy at the end of May 2010, had she asked for it, but she never asked for it.  See id.  Notwithstanding, HIPA "looked into whether any sales came in during that first week of June, and learned that no additional sales had come in."  Coleman Affidavit ¶ 12; see also Carmona Affidavit ¶ 18.

[13]  Plaintiff argues that Defendants moved for summary judgment only on the retaliation claim.  DE 34 at 6.  However, Defendant's Motion for Summary Judgment seeks summary judgment and dismissal of Plaintiff's complaint "in its entirety."  DE 29 at 1 (emphasis added).  The Court therefore rejects Plaintiff's argument on this point.

2. Retaliation

Plaintiff's retaliation claim fails for the same reasons. Plaintiff contends that HIPA retaliated against her (i.e., terminated her employment) because she took FMLA leave. Plaintiff, however, cites no direct evidence of HIPA's intent. To the contrary, Plaintiff testified that HIPA never made any remarks about her need for leave, even when she obtained leave on prior occasions. See Plaintiff's Deposition [DE 33-1] at 25-27.

When a plaintiff asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, the Court applies the same burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for evaluating Title VII discrimination claims. See Brungart v. BellSouth Telecomm. Inc., 231 F.3d 791, 798 (11th Cir. 2000). To state a claim of retaliation, an employee must allege that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. Id.

Plaintiff asserts that HIPA retaliated against her by firing her for taking FMLA leave. Furthermore, "[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." Id. Here, HIPA terminated Plaintiff's employment less than two weeks after Plaintiff asserted her FMLA rights. Thus, there is temporal proximity between the adverse employment action and Plaintiff's protected conduct.

Nonetheless, as set forth above, undisputed evidence shows that HIPA advised

Plaintiff, prior to Plaintiff's request for FMLA leave, that HIPA would terminate her if she did not make 111 sales by May 31, 2011.  Undisputed evidence also shows that Plaintiff failed to make 111 sales by May 31, 2011.  Defendant, therefore, has set forth a non-discriminatory/non-retaliatory reason for terminating Plaintiff.  Indeed, Plaintiff testified that she knew she would be fired if she failed to meet the sales goal.  Plaintiff has produced no evidence that HIPA's stated reason was mere pretext and no reasonable jury could find that HIPA's stated reason was pretextual.  Plaintiff, therefore, has failed to carry her burden.

### III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment [DE 28] is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment Against Defendants [DE 32] is **DENIED**.  The Court shall enter a separate final judgment.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 24th day of March, 2011.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record.